ORLANDO M. BARNES (JARVIS, BARNES & Co.), v. MARVIN GARDNER AND ORLEANS L. JORDAN.

| 60 | 133 |
| 61 | 418 |
| 61 | 422 |

*Replevin—Demand—Agency.*

1. A demand made by the claimant of personal property upon a person having no control over same, nor authority to deliver, or refuse to deliver it, would seem to be useless.

2. It is error to submit to the jury the question of a general agency, when the testimony tends only to show a special one.

Error to Kalamazoo. (Mills, J.) Argued February 3, 1886. Decided February 17, 1886.

Replevin. Defendants bring error. Affirmed as to Gardner and reversed as to Jordan. The facts are stated in the opinion.

*Hampden, Kelsy & O. L. Jordan*, for appellants.

*Cahill & Ostrander*, for plaintiffs.

SHERWOOD, J. On the twenty-seventh of July, 1883, the plaintiffs entered into a contract with H. C. Underwood & Co. to make and deliver to them, on the cars at Kalamazoo, an engine and boiler. By the terms of the contract the price of the machinery was to be $1,125, and to be paid in cash when it was set up and in good working order.

Underwood & Co. had rented a shop of W. G. Pattison, of Kalamazoo, for a term of years, and the machinery was placed therein and set up, but was not satisfactory on account of defects in the boiler. H. C. Underwood & Co. refused to accept or pay for the same, and soon went out of business. By an arrangement with the defendant Gardner, who was one of the firm of H. C. Underwood & Co., he retained the shop in which the machinery was located, and on the eighteenth day of April, 1884, made an arrangement with the plaintiffs to retain the engine and boiler. The contract was reduced to writing, from which it appears that Gardner agreed to give for the machinery his three notes for $444.27 each, due in the months of October, 1884, and in April and October, 1885, respectively, thereafter.

The contract also contains the following clause:

" And it is expressly agreed by and between the parties hereto, that the title to, and right of possession of the machinery is to remain and be in said Jarvis, Barnes & Co. until all the purchase price thereof is paid; and that if said Jarvis, Barnes & Co. should consent to permit said M. R. Gardner to retain the possession of the said machinery, said possession shall be for said Jarvis, Barnes & Co.; and that said property is not to be removed from the city of Kalamazoo unless upon the written consent of said Jarvis, Barnes & Co."

The machinery was left in the shop with Gardner, and he continued to use it until the month of September, 1884, when he closed his shop at Kalamazoo, and went to Wabash, Indiana, to do business. At the time he left he had failed to make terms with Mr. Pattison for the surrender of his lease of the shop, and the latter claimed some sort of lien upon the machinery for the rent, for which he intended to hold Gardner for the balance of the term.

It further appears that the defendant Jordan, who is an attorney at law, was employed by Gardner to assist him in the arrangement of some settlement, if one could be obtained, with Mr. Pattison, and when Gardner left he handed Mr. Jordan the keys to the shop, with the request if such settlement was secured that he should then give the keys to Mr. Pattison.

When the first note fell due, Gardner was in Indiana, and the same was returned to plaintiffs' protested. Thereupon the attorney for plaintiffs went to Kalamazoo, found the shop locked up with the machinery in it, and Mr. Jordan had the keys with the above-mentioned instruction from Gardner. In an interview with Jordan the latter informed the plaintiff's attorney that he could only surrender the keys of the shop under the circumstances he had stated, and further told plaintiffs' attorney if anything more was required, the attorney would have to see or communicate with Gardner; that he had no authority to give them up upon any other consideration; that he had no possession or control of the machinery. The plaintiffs' attorney asked Mr. Jordan for the keys to the shop, and told him he came to take the machinery. This request was not complied with, and thereupon the complainants brought this suit for the property against these defendants. No personal service was had upon Gardner, but he subsequently appeared in the case and defended. The property was taken upon the writ. A trial was had in the Kalamazoo circuit, resulting in favor of the plaintiffs.

The above facts are not substantially contradicted, or in any material sense modified. Jordan testifies that no demand was ever made upon him for the property by the plaintiffs or their attorney; this, however, is claimed to be otherwise. The testimony is not clear upon the point, but if it was material the verdict of the jury would be adverse to the defendants' claim. It is difficult to see of what use a demand would be upon Jordan for the property, so long as he had no control over the machinery, nor authority to deliver, or refuse to deliver it; and we find nothing in the record from any of

the testimony showing, or necessarily tending to show, any such control or authority. These two facts cannot be assumed for the purpose of charging a party in an action for a wrong, and it was not proper for the court to submit the question of general agency to the jury, when the testimony tends only to show a special one.

The judgment will be affirmed as to defendant Gardner and reversed as to defendant Jordan, and he will be allowed to recover his costs in both courts.

The other Justices concurred.